**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

THE HUMANE SOCIETY
OF THE UNITED STATES,                               *

    **Plaintiff,**                                          *

**v.**                                                      *                **Case No.: PWG-16-2029**

NATIONAL UNION FIRE INSURANCE          *
COMPANY OF PITTSBURGH, P.A.,
                                               *

    **Defendant.**                                          *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**<u>MEMORANDUM OPINION AND ORDER</u>**

In *Humane Society v. National Union Fire Insurance Co.*, No. DKC-13-1822 (D. Md.) ("*Humane Society I*"), the Humane Society of the United States ("Humane Society" or "HSUS") and two of its attorneys sued their insurer, National Union Fire Insurance Company of Pittsburgh, P.A. ("National Union"), for coverage under a claims-made insurance policy. They sought to recover defense costs relating to a lawsuit filed against them in the United States District Court for the District of Columbia. Although the lawsuit was filed during 2007, the policy under which they sought coverage required that claims first be made against them during 2009-2010 ("2009-2010 Policy"). Judge Chasanow granted partial summary judgment to National Union with respect to Humane Society's 2009-2010 Policy coverage claims, but denied National Union's other requests for summary judgment as to the individual plaintiffs. Before *Humane Society I* concluded, Humane Society filed this suit, seeking to recover the same damages it sought in *Humane Society I*, pursuant to two different insurance policies. Compl.,

ECF No. 1.[1]  National Union moved to dismiss or to stay pending resolution of *Humane Society I*, ECF No. 9, and then the parties jointly moved to stay this litigation on the same basis, ECF No. 15.  I granted the joint motion, staying this case while *Humane Society I* concluded, and reopened this case upon entry of final judgment in *Humane Society I*.  ECF No. 16.  Now, because *res judicata* bars this action, I will grant National Union's motion and dismiss this case.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

In 2007, Feld Entertainment, Inc. ("Feld") filed suit in the United States District Court for the District of Columbia against the Fund for Animals, an affiliate of Humane Society.  Feld amended its complaint in 2010 to name Humane Society and two of its in-house counsel as additional defendants.  July 30, 2015 Mem. Op. 1–3, ECF No. 84 in *Humane Society I*.  Humane Society sought to recover its litigation costs by providing notice on March 1, 2010 under insurance policies (the 2009-2010 Policy and the "Employed Lawyer Policy") that it held through National Union.[3]  *See id.* at 3–4; Compl. ¶ 24.  The 2009-2010 Policy provided coverage for "claim[s] first made against the Organization [which was defined to include Humane Society

---

[1] Citations to filings in *Humane Society I* are designated "*Humane Society I*"; citations without that designation are to filings in the case pending before me.

[2] For the purposes of resolving National Union's Motion to Dismiss, I accept the facts alleged in Humane Society's Complaint as true.  *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011).  I also may take judicial notice of court records.  Fed. R. Evid. 201(b); *see also WW, LLC v. Coffee Beanery, Ltd.*, No. WMN–05–3360, 2012 WL 3728184, at *6 (D. Md. Aug. 27, 2012).

[3] National Union issued to Humane Society three separate insurance policies that provided "insurance protection for the Organization and Individual Insureds":

> (1) Policy No. 01-932-56-98, for the period June 1, 2009 to June 1, 2010 (the "2009-2010 Policy");
>
> (2) Policy No. 965-95-51, for the period January 1, 2007 to January 1, 2008 (the "2007-2008 Policy");  and
>
> (3) Policy No. 01-950-29-84, for the period June 1, 2009 to June 1, 2010 (the "Employed Lawyers Policy").

Compl. ¶¶ 7(a)–(b), 9.

as the policy holder, as well as its affiliates] during the Policy Period," that is, from June 1, 2009 to June 1, 2010. July 30, 2015 Mem. Op. 17, 21 in *Humane Society I.*

When National Union refused to pay under the 2009-2010 Policy (having not yet determined whether it would provide coverage on the other claim), Humane Society (as well as two individual plaintiffs, Humane Society's in-house counsel) filed suit based on that denial. Compl., ECF No. 2 in *Humane Society I.* Litigation began in the Circuit Court for Montgomery County on June 21, 2013, where Humane Society alleged breach of contract and sought a declaratory judgment. *Id.* National Union removed the case to this Court, where it was assigned to Judge Chasanow. ECF No. 1 in *Humane Society I.* Judge Chasanow issued a scheduling order that set the deadline for seeking leave to amend the pleadings as August 15, 2013, ECF No. 11 in *Humane Society I*; Humane Society never requested an extension of that deadline.

National Union denied coverage under the Employed Lawyers Policy on April 13, 2015, Compl. ¶ 26, but Humane Society did not seek leave at that time to amend its complaint in *Humane Society I* to add a claim under that policy. On summary judgment after the close of discovery in *Humane Society I*, Judge Chasanow concluded that "no coverage is available for HSUS under the 2009-2010 Policy" because Feld filed suit against Humane Society's affiliate "in 2007, outside the 2009-2010 coverage period." July 30, 2015 Mem. Op. 22, 25 in *Humane Society I.* The Court entered judgment in National Union's favor on Humane Society's claims on July 30, 2015; the individual plaintiffs' claims remained pending. July 30, 2015 Order, ECF No. 85 in *Humane Society I*; *see also* July 11, 2016 Mem. Op., ECF No. 98 in *Humane Society I* (summarizing procedural history); Jt. Ex. 4, ECF No. 10-2 (timeline).

Thereafter, on August 24, 2015, Humane Society "made a claim . . . for National Union to provide coverage under the 2007-2008 D&O Policy" ("2007-2008 Policy")[4] and on September 8, 2015, it sought leave to amend its complaint in *Humane Society I*, *inter alia*, to add breach of contract and declaratory judgment claims under that policy and the Employed Lawyers Policy, alleging that National Union had rejected its claim under the Employed Lawyers Policy on April 13, 2015 and was "anticipated to breach its coverage under the 2007-2008 . . . Policy." ECF Nos. 87, 90, 90-2 in *Humane Society I*. National Union did indeed deny the claim on October 28, 2015. The Court denied the motion to amend on July 11, 2016, because Humane Society failed to establish good cause for the untimely amendment or show due diligence in pursuing these claims, and the proposed amendment, almost a year after discovery closed and about two months after the summary judgment ruling, would prejudice National Union. ECF Nos. 98, 99 in *Humane Society I*.[5]

One month before Judge Chasanow denied leave to amend and while the individual plaintiffs' claims (which they assigned to Humane Society) remained pending, Humane Society filed this suit on June 10, 2016,[6] bringing claims under the 2007-2008 Policy and the Employed Lawyers Policy that are identical to the claims they sought to bring in *Humane Society I*. National Union moved to dismiss or stay the claims in this case based on *res judicata* and principles of comity. ECF No. 9. The parties fully briefed the motion, ECF Nos. 9-1, 10, 11,

[4] Humane Society contends that, "[b]ecause both the 2007-08 D&O Policy and the 2009-10 D&O Policy are 'claims made' policies, HSUS is permitted to seek coverage on its own behalf under one or the other of the policies, but not both at the same time." Pl.'s Opp'n 5 n.7.

[5] Humane Society filed a motion for reconsideration or clarification, ECF No. 138 in *Humane Society I*, eight months later, and Judge Chasanow denied the motion, ECF Nos. 151, 152 in *Humane Society I*.

[6] Humane Society erroneously asserts that, "[w]hen Judge Chasanow, after some eight months, denied HSUS's motion for leave to amend, HSUS promptly filed this action in June 2016." Pl.'s Opp'n 6.

and then filed a consent motion to stay the case pending resolution of *Humane Society I*, ECF No. 15. I granted the consent motion, administratively closed the case, and struck the motion, without prejudice to reinstatement when the case reopened. ECF No. 16.

In *Humane Society I*, the parties stipulated to the dismissal of the individual plaintiffs with prejudice, which the Court approved. ECF No. 110, 111. On August 2, 2017, the parties stipulated to the dismissal of the remaining claim and entry of judgment in National Union's favor. ECF No. 156. The Court approved the stipulation, ECF No. 157, and entered an order dismissing any remaining claims and closing the case, ECF No. 158.

The parties filed a status report, informing me of the dismissal and agreeing that it resolved Humane Society's claims in this case under the Employed Lawyers Policy, such that only the claims under the 2007-2008 Policy remain. Jt. Status Rep. 1-2, ECF No. 18. I reopened this case and reinstated National Union's motion to dismiss or stay. In light of the resolution of *Humane Society I*, insofar as National Union sought to stay the case or to dismiss the claims under the Employed Lawyers Policy, the motion is moot. With regard to dismissal of the claims under the 2007-2008 Policy, the motion is ripe for resolution, and a hearing is not necessary. *See* Loc. R. 105.6. Because *res judicata* bars the remaining claims, I will grant the motion and dismiss the claims.

## STANDARD OF REVIEW

National Union moves to dismiss pursuant to Rule 12(b)(6), under which Humane Society's pleadings are subject to dismissal if they "fail[ ] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). "A claim has facial

plausibility when the [claimant] pleads factual content that allows the court to draw the reasonable inference that the [opposing party] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Rule 12(b)(6)'s purpose "is to test the sufficiency of a [claim] and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012) (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). If an affirmative defense "clearly appears on the face of the [pleading]," however, the Court may rule on that defense when considering a motion to dismiss. *Kalos v. Centennial Sur. Assocs.*, No. CCB-12-1532, 2012 WL 6210117, at *2 (D. Md. Dec. 12, 2012) (quoting *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000) (citation and quotation marks omitted)). One such affirmative defense is *res judicata*, or claim preclusion.

## APPLICABLE LAW

Preliminarily, I must determine whether to apply state or federal law to decide what preclusive effects the rulings in *Humane Society I* have. Humane Society insists that "federal *res judicata* law . . . applies here," Pl.'s Opp'n 14, whereas National Union argues that "substantive Maryland law [is] controlling here," Def.'s Reply 1; *see also id.* at 2–3. It is true that when a party raises the defense of *res judicata* in federal court with regard to a prior judgment issued by a federal court, federal common law governs the preclusive effect of the prior federal court judgment. *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008). But, when the federal court that issued the prior judgment did so while exercising diversity jurisdiction, federal common law adopts the preclusion rule of the state in which that court was located. *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001); *see also Taylor*, 553 U.S. at 891 n.4 ("For judgments in diversity cases, federal law incorporates the rules of preclusion applied by the State in which the

rendering court sits." (citing *Semtek*).  Thus, where, as here, a federal court in Maryland exercises diversity jurisdiction to hear a case and issue a judgment, Maryland claim preclusion law applies.  *See Taylor*, 553 U.S. at 891 n.4; *Semtek*, 531 U.S. at 508.

Under Maryland law, *res judicata* provides grounds for dismissal if a defendant establishes that "(1) the present parties are the same or in privity with the parties to the earlier dispute, (2) the claim presented is identical to the one determined in the prior adjudication, and (3) there has been a final judgment on the merits." *Capel v. Countrywide Home Loans*, *Inc.*, No. WDQ-09-2374, 2010 WL 457534, at *3 (D. Md. Feb. 3, 2010) (citing *Anne Arundel County Bd. of Educ. v. Norville*, 887 A.2d 1029, 1037 (Md. 2005)).  Maryland law employs the "transaction test" to determine whether the claims are identical.  *See Kent Cty. Bd. of Educ. v. Bilbrough*, 525 A.2d 232, 238 (Md. 1987).  "Under the transaction test, a 'claim' includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the claim arose." *Boyd v. Bowen*, 806 A.2d 314, 325 (Md. Ct. Spec. App. 2002) (citing *FWB Bank v. Rickman*, 731 A.2d 916, 928 (Md. 1999)). *Res judicata* bars not only claims from the original litigation, but also other claims that could have been brought in the original litigation. *Id.* (citing *Gertz v. Anne Arundel Cty.*, 661 A.2d 1157, 1161 (Md. 1995)).

## PARTIES' ARGUMENTS

National Union contends that the parties are the same as in *Humane Society I* and that Humane Society "advance[s] the exact same claims" that it sought to bring in its motion for leave to amend its complaint in *Humane Society I*, which "Judge Chasanow has already rejected," and "an order denying leave to amend has *res judicata* effect on the rejected claims." Def.'s Mem. 1–2, 3.  Additionally, it insists that the denial of leave to amend did not have to be

on the merits under these circumstances because "*res judicata* applies to denials based on mere timeliness." *Id.* at 4. In support of its position, National Union cites a single Maryland case, *Gonsalves v. Bingle*, 5 A.3d 768 (Md. Ct. Spec. App.), *cert. denied*, 10 A.3d 1181 (Md. 2010) (Table); federal case law; and treatises.

Humane Society concedes that the parties are the same, but counters that its claims are not "*de facto* identical to the claims in *Humane Society I* simply because HSUS unsuccessfully sought to add the same claims by way of amendment in *Humane Society I*." Pl.'s Opp'n 11, 13. Humane Society also argues that "National Union's insurance coverage obligations to HSUS under each policy are independent of its obligations under each other policy," such that the policies are not all part of the same transaction. *Id.* at 11–12. And, in Humane Society's view, there was no judgment on the merits of these claims. *Id.* at 2. Plaintiff cites federal case law and differentiates *Gonsalves* on the basis that the claims at issue in that case were "virtually identical to prior claims, so that the final resolution of the prior claim necessarily resolved the merits of the subsequent claims as well." *Id.* at 11.

For the first time in its Reply, National Union argues that the claims under the 2007-2008 Policy and the Employed Lawyers Policy are the same as the claim under the 2009-2010 Policy for *res judicata* purposes because, as Judge Chasanow found, Humane Society "could have filed suit under the two policies [at issue in this case] in 2012 because their causes of action had already arisen by 2012." Def.'s Reply 11. Although typically "courts should not consider new arguments or new evidence raised for the first time in reply briefs," courts may consider new arguments when, as here, they are "offered to rebut arguments specifically raised in an opposition." *Sprint Nextel Corp. v. Simple Cell Inc.*, 248 F. Supp. 3d 663 (D. Md. 2017) (citing *Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 734 (D. Md. 2006); *Allen v.*

*Enabling Techs. Corp.*, 2016 WL 4240074, at *4, 11–13 (D. Md. Aug. 11, 2016). Moreover, given that this Court may dismiss an action *sua sponte* under the doctrine of *res judicata* if it "is on notice that the issues presented in a suit have been previously decided," *Roberts v. Thrasher*, No. ELH-15-1906, 2015 WL 4485477, at *2 (D. Md. July 20, 2015) (quoting *Arizona v. California,* 530 U.S. 392, 413 (2000) (citation and citation marks omitted)), and I am aware of Judge Chasanow's decision, it is appropriate to consider this argument. *See Innocent v. Bank of New York Mellon*, No. PWG-16-1132, 2016 WL 8273956, at *1 (D. Md. Apr. 25, 2016), *aff'd sub nom. Innocent v. The Bank of New York Mellon*, 668 F. App'x 467 (4th Cir. 2016).

## DISCUSSION

As noted, Maryland claim preclusion law applies, and therefore, *Gonsalves* is the starting point for my analysis. There, Gonsalves, with the assistance of her attorney daughter (the "Buyers"), entered into a contract to purchase real property, paying an immediate deposit and promising to pay the remainder of the purchase price within thirty days. *Id.* at 769–71. The Buyers failed to pay the balance, and the Sellers filed suit against them in the Circuit Court for Anne Arundel County, Maryland for breach of contract, seeking to retain the deposit. *Id.* at 769–70. While the case was pending, the Sellers "sold the property to another buyer at a price less than the amount Gonsalves had agreed to pay," and then "sought to amend their complaint to recover, in addition to the deposit, damages for the difference in the sales price as contracted by Gonsalves and as sold to a third party ('actual damages')." *Id.* at 770, 772. The Anne Arundel County court denied the motion without explanation. *Id.* at 772.

Thereafter, the Sellers filed a second suit for breach of contract against the Buyers in the Circuit Court for Montgomery County, Maryland, this time seeking to recover actual damages. *Id.* at 770. After the Anne Arundel County court entered judgment in the Sellers' favor in the

first case, the Buyers moved to dismiss the second case based on *res judicata* and later for summary judgment on the same basis, both times without success. *Id.* at 773–74. After trial, the court granted one of the buyers' motion for judgment, and a jury returned a verdict in the Sellers' favor, against Gonsalves, the other Buyer. *Id.* at 776.

On appeal, Gonsalves challenged the trial court denial of her motion to dismiss based on *res judicata*. *Id.* at 776–77. The Court of Special Appeals stated that, to determine whether the claim was "the 'same claim' they were not permitted to pursue in the Anne Arundel County Case," it applied the transaction approached described in the Restatement (Second) of Judgments ("Restatement") § 24:

> (1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar . . . , the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.
>
> (2) What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

*Gonsalves*, 5 A.3d at 777 (quoting Restatement § 24; citing *Norville*, 887 A.2d at 1038); *see also Kent Cty. Bd. of Educ. v. Bilbrough*, 525 A.2d 232, 238 (Md. 1987) ("We . . . generally approve of the approach to resolving the question of identity of claims found in § 24 of the Restatement."). The Court of Special Appeals observed that "[t]he transactional approach effectively obligates a plaintiff to bring in a single action all claims 'based upon the same set of facts,[] and [that] one would [ordinarily] expect . . . to be tried together.'" *Gonsalves*, 5 A.3d at 778 (quoting *Norville*, 887 A.2d at 1038 (emendations in *Gonsalves*)). This is a common sense approach that courts take because they "see [a] claim in factual terms and . . . make it coterminous with the transaction regardless of the number of substantive theories, or variant

forms of relief flowing from those theories, that may be available to the plaintiff," provided that "the parties have ample procedural means for fully developing the entire transaction in the one action going to the merits to which the plaintiff is ordinarily confined." *Id.* (quoting Restatement § 24 cmt. a). The Restatement noted that the "modern procedural system does furnish such means," as it allows for mutually inconsistent allegations and "considerable freedom of amendment." *Id.* at 778 (quoting Restatement § 24 cmt. a).

The *Gonsalves* Court concluded that *res judicata* barred the Sellers' claim in the second litigation. *Id.* at 778. It reasoned that the claim was the same because each lawsuit "stated a single cause of action against Gonsalves for breach of contract, based upon the same transaction," and "[g]iven that the damages [Sellers] were seeking stemmed from a single occurrence/set of facts, namely, the alleged breach of the sales contract for the Property, the parties to the contract reasonably would have expected that all claims for damages would be brought in one forum, in one case." *Id.* at 778.

Importantly, for purposes of the case before me, the court then considered the effects of the Anne Arundel County Circuit Court's denial of the motion to amend. *Id.* at 781. Its ruling could not have been clearer:

> [A] plaintiff who is denied leave to amend his or her complaint to add additional claims . . . is nonetheless barred from raising those claims in a second suit based on the same transaction or series of transactions as the first. . . . [R]*es judicata* should apply regardless of whether (a) the trial court's denial of leave to amend was erroneous, (b) the trial court's decision was based on procedural grounds instead of the merits, and/or (c) the adverse party opposed the motion for leave to amend. . . .

*Gonsalves*, 5 A.3d at 783 (footnotes omitted) (citing *Professional Management Associates v. KPMG, LLP*, 345 F.3d 1030 (8th Cir. 2003) (per curiam); *EFCO Corp. v. U.W. Marx, Inc.*, 124 F.3d 394 (2d Cir. 1997); Restatement § 25 & cmts. b & c); *see also Powell v. Breslin*, 59 A.3d

531, 538 (Md. 2013) (citing *Gonsalves* in support of its reasoning that *res judicata* applied regardless whether "a ruling in an original suit was found later to be in error"); *Hatch v. Trail King Indus., Inc.*, 699 F.3d 38, 46 (1st Cir. 2012) (noting that "[c]ourts applying other states' laws have held that denial of leave to amend constitutes a final judgment on the merits, subjecting those claims to claim preclusion"; citing *Gonsalves*, 5 A.3d at 783, and *Kaye v. S & S Tree Horticulture Specialists, Inc.,* No. A08–1027, 2009 WL 1311808, at *3 (Minn. Ct. App. May 12, 2009), in which the courts stated that *res judicata* applied even if the court denied leave to amend based on procedural grounds, and *Bush v. Dictaphone Corp.*, No. 98AP–585, 1999 WL 178370, at *5 (Ohio Ct. App. Mar. 30, 1999) (per curiam), and *Dall v. Goulet*, 871 F. Supp. 518, 521 (D. Me. 1994) (applying state law), in which the court did not address the basis for the denial of leave to amend).

This may, at first, appear to be a harsh result, because the merits of the precluded claim were never addressed. But, the *Gonsalves* Court explained that, even when a ruling issued on procedural grounds without analysis, "once the case concluded after a bench trial, a final judgment existed on the merits," and "*res judicata* applies in that circumstance to the rulings that preceded the final judgment, unless challenged and overturned on appeal." *Gonsalves*, 5 A.3d at 783. It reasoned:

> Allowing a plaintiff denied leave to amend to thereafter pursue his or her additional claims in a separate action would undermine the judgment of the original trial court and subvert the jurisdiction of appellate courts to review matters raised in or decided by the trial court. *See* Rule 8-131(a). Moreover, . . . multiple lawsuits based on the same set of facts . . . would waste judicial resources and potentially lead to inconsistent decisions-outcomes that are directly at odds with the purpose of the *res judicata* doctrine. *See Norville, supra,* 390 Md. at 107, 887 A.2d 1029 ("'[*Res judicata*] avoids the expense and vexation attending multiple lawsuits, conserves the judicial resources, and fosters reliance on judicial action by minimizing the possibilities of inconsistent decisions.' " (quoting *Murray Int'l Freight Corp.,* 315 Md. at 547, 555 A.2d 502)). Finally, to allow such an exception to *res judicata* under these circumstances would be

inconsistent with the transactional approach endorsed by the Restatement,[] *supra,* and followed in this State.

*Gonsalves*, 5 A.3d at 783–84 (footnote omitted). In a nutshell, the Court of Special Appeals observed that "[t]he proper mode of redress for a plaintiff aggrieved by the denial of leave to amend is to appeal that ruling upon the entry of a final judgment." *Id.* at 783.

*Claims from the Same Occurrence*

Here, there can be no doubt that there was one event, involving one set of facts: Humane Society, which held three insurance policies through National Union, incurred litigation costs defending a lawsuit, and it sought to recover those costs from its insurer. Certainly, the policies are distinct, such that a breach of one contract does not constitute a breach of another. It is true that Humane Society placed—and was denied—its claims under the policies at different times. But, all of its claims under the policies stem from the same event and seek to recover the same damages—its litigation expenses in defending against the claims Feld brought. And, because any factual differences only involve contractual language, hearing the claims together would not require much, if any, additional discovery and would not confuse the trier of fact. Thus, the claims under the 2007-2008 Policy and the Employed Lawyers Policy are related in origin and motivation to the claims under the 2009-2010 Policy (and seek recovery for the identical damages sought in the suit under the 2009-2010 Policy—recovery of litigation costs associated with the Feld lawsuit) and would "form a convenient trial unit." *See* Restatement § 24(2); *Gonsalves*, 5 A.3d at 777–78. Indeed, the very fact that Humane Society sought to file an amended complaint (belatedly) to add the 2007-2008 Policy and Employed Lawyers Policy claims in *Humane Society I* proves this very point.

Nor can it be claimed that Humane Society lacked "ample procedural means for fully developing the entire transaction" in *Humane Society I*. *See Gonsalves*, 5 A.3d at 778 (quoting Restatement § 24 cmt. a). National Union denied its claims under the Employed Lawyers Policy and the 2007-2008 Policy on April 13, 2015 and October 28, 2015, respectively, and *Humane Society I* did not conclude until August 2, 2017. Thus, Humane Society had ample opportunity to amend its pleading in *Humane Society I* to add a claim under the 2007-2008 Policy after it was denied coverage under that policy. Moreover, when it untimely moved (on September 8, 2015) to amend, it did so before National Union denied its claim under the 2007-2008 Policy, proposing a claim based on anticipated breach, showing that it did not need to wait for the denial to bring the claims it wished to bring. *See* Proposed Am. Compl., ECF No. 90-2 in *Humane Society I*.

Although the scheduling order for *Humane Society I* set August 15, 2013 as the deadline for amending pleadings, Humane Society could have moved to extend that deadline, which it did not do. And, even after the deadline passed, Humane Society had (and took) the opportunity to file a motion for leave to amend to add these claims. Upon a showing of good cause, such motions routinely are granted, *see Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008) (citing Fed. R. Civ. P. 16(b)), but the problem was that Humane Society failed to show good cause for its delay. Indeed, in denying the motion for leave to amend, Judge Chasanow also granted a 60-day extension of the discovery deadline, such that, had the motion to amend been granted, Humane Society would have had the time for any necessary minimal discovery on its new claims. *See* July 11, 2016 Mem. Op. 1. And, the fact that Judge Chasanow ultimately denied leave to amend does not mean that Humane Society did not have ample prior opportunity to

bring its claims under the 2007-2008 Policy and Employed Lawyers Policy. *See Gonsalves*, 5 A.3d at 783–84.

Humane Society contends that, "[b]ecause both the 2007-08 . . . Policy and the 2009-10 . . . Policy are 'claims made' policies, HSUS [was] permitted to seek coverage on its own behalf under one or the other of the policies, but not both at the same time," such that it could not have filed a timely motion to amend. Pl.'s Opp'n 5 n.7. But it provides no legal support for this assertion. Nor is it even relevant, because National Union denied its claim under the 2009-2010 Policy in 2010, leaving Humane Society a generous opportunity to assert a claim under the 2007-2008 Policy. And, Judge Chasanow specifically concluded that Humane Society could have brought its claims under the 2007-2008 Policy earlier. *See* July 11, 2016 Mem. Op. 11–12 ("The underlying facts were long known to Plaintiffs, and Plaintiffs could have included some claims under the 2007-2008 . . . Policy and the Employed Lawyers Policy when they commenced this action, and certainly before the expiration of the scheduling order deadline"). Under the related doctrine of collateral estoppel, "when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *John Crane, Inc. v. Puller*, 899 A.2d 879, 893 (Md. Ct. Spec. App. 2006) (quoting *Janes v. Maryland*, 711 A.2d 1319, 1324 (Md. 1998)).[7] This issue of fact was actually litigated between these parties, and as I discuss below, there was a final judgment. Also, the fact

_____

[7] To "avoid [ ] . . . unnecessary judicial waste," the Court may consider collateral estoppel *sua sponte*, if it "is on notice that it has previously decided the issue presented." *Arizona v. California*, 530 U.S. 392, 412 (quoting *United States v. Sioux Nation,* 448 U.S. 371, 432 (1980) (Rehnquist, J., dissenting) (citations omitted)), *supplemented*, 531 U.S. 1 (2000); *see also Alston v. Equifax Info. Servs., LLC*, No. TDC-15-3343, 2016 WL 5349716, at *3 (D. Md. Sept. 22, 2016) (noting that "courts may raise the issue of collateral estoppel *sua sponte*").

that Humane Society could have brought the claims earlier but elected not to was essential to Judge Chasanow's finding that Humane Society failed to exercise due diligence and consequently had not shown good cause to amend. *See* July 11, 2016 Mem. Op. 13 ("Plaintiffs offer no justification for their substantial delay in seeking to include claims under the 2007-2008 . . . Policy and the Employed Lawyers Policy, and the potential to pursue such claims came as no surprise to Plaintiffs. They had ample time during the course of this litigation to have pursued coverage under the additional policies. Accordingly, because Plaintiffs failed to establish that they exercised diligence in seeking leave to amend the complaint, they have not satisfied Rule 16, and their motion will be denied." (citation omitted)). Therefore, Judge Chasanow's determination that Humane Society could have brought the claims earlier is conclusive here, and Humane Society is estopped from arguing otherwise. *See Janes*, 711 A.2d at 1324; *John Crane, Inc.*, 899 A.2d at 893.

Humane Society cites three cases in support of its argument that "each separate insurance policy purportedly breached by a defendant constitutes a separate and independent transaction, even when the same insurer issues the separate policies," because the insurer's obligations differ under each, Pl.'s Opp'n 12: *Mag-Dolphus, Inc. v. Ohio Cas. Ins. Co*., 40 F. Supp. 3d 817, 826–27 (S.D. Tex. 2014); *Milone v. Fidelity Nat'l Ins. Co*., No. 13 CV 6331 (SJF)(ARL), 2013 WL 6328254, at *3 (E.D.N.Y. Dec. 3, 2013); and *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 210 (4th Cir. 2009). None of these cases provides controlling authority, as two are from other district courts, and the Fourth Circuit opinion in *Ohio Valley* applied federal preclusion law, not Maryland law. Moreover, these cases are inapposite. In *Mag-Dolphus*, the Southern District of Texas applied the transactional test under Texas law to conclude that the facts of the case before it—in which the plaintiff claimed water damage from a 2011 storm and

sought to recover from its insurance provider—were not a part of the same transaction or occurrence as the previous lawsuit—in which the plaintiff claimed water damage from a hurricane three years earlier and sought to recover from the same insurance provider. 40 F. Supp. 3d at 826–27. Thus, the underlying facts were distinct from the previous litigation, and "involve[d] an insurance policy that was not in effect when [the earlier hurricane] occurred," *id.* at 827, whereas here, Humane Society seeks to recover the same litigation expenses in both suits, and claims that it was the 2007-2008 Policy that was in effect when Feld brought suit, not the 2009-2010 Policy, as it alleged in *Humane Society I.*

In *Milone*, the Eastern District of New York stated that "judicial economy and fairness dictate that plaintiffs' claims under each distinct insurance policy issued by defendant be tried separately." 2013 WL 6328254, at *3. But, it did so while considering when claims are the same for purposes of permissive joinder of plaintiffs under Rule 20(a), not *res judicata. See id.* Moreover, there, each of the six plaintiffs owned separate, insured property and each sought to recover under his or her own insurance policy; the only unifying factors were that the properties were damaged in the same storm, and the same defendant insurance provider issued all of the policies. *Id.* Here, as noted, there was only one underlying event that affected one company (and its in-house counsel), not six different events affecting six different plaintiffs in six different locations.

In *Ohio Valley*, an environmental coalition ("Ohio Valley") challenged four permits that the U.S. Army Corps of Engineers ("Corps") had issued to coal mining companies. 556 F.3d at 185–86, 187, 188. The affected companies intervened ("Intervenors"), arguing in district court and on appeal that *res judicata* barred Ohio Valley's claim for declaratory relief because Ohio Valley had challenged the Corp's authority under other permits in previous litigation. *Id.* at 189,

209.  The district court concluded that *res judicata* did not bar the claims, and the Fourth Circuit affirmed, reasoning that those permits at issue previously were not the same permits at issue in *Ohio Valley*. *Id.* at 210.  As in *Mag-Dolphus*, and unlike in the case before me, the contracts (permits) at issue "were not even in existence at the time of [the earlier litigation]," such that the claims "'did not even . . . exist'" at the time of the prior judgment.  *Id.* at 211 (quoting *Lawlor v. Nat'l Screen Serv. Corp.,* 349 U.S. 322, 328 (1955)).  On that basis, the Fourth Circuit concluded that the prior judgment could not "be given the effect of extinguishing claims" that did not exist when it was entered. *Id.* (quoting *Lawlor*, 349 U.S. at 328).  Here, in contrast, the policies all existed when Humane Society filed *Humane Society I*, and Judge Chasanow found that Humane Society's claims under the Employed Lawyers Policy and the 2007-2008 Policy existed before the August, 2013 scheduling order deadline for amending, four years before *Humane Society I* closed in August 2016.  And, even if the claims had not existed until National Union denied coverage in April and August 2015, those denials still occurred well over a year before the case closed.  Thus, National Union has established that the claims stem from the same occurrence and are the "same" under Maryland law for purposes of *res judicata*, and Humane Society has not identified any facts or case law that would lead me to a different conclusion.

## Final Judgment on the Merits

It is true that Judge Chasanow denied the motion to amend on procedural grounds without reaching the merits of the claims, which in Humane Society's view means that *res judicata* cannot bar the claims because there has not been a final judgment on their merits.  Pl.'s Opp'n 2, 8–10.  According to Humane Society, this case is unlike *Gonsalves*, where there was a final judgment on the merits, because there, the later claim was for breach of the same contract

that was the subject of the earlier breach of contract claims on which the court entered judgment. *Id.* at 11.

But, here, Judge Chasanow entered summary judgment in National Union's favor on Humane Society's claims against it on July 30, 2015, and two years later issued an Order dismissing all remaining claims, incorporating "[a]ll prior rulings," and stating that the "judgment is final for purposes of Fed.R.Civ.P. 58." Aug. 2, 2017 Order in *Humane Society I*. Thus, there was final judgment on the merits of the 2009-2010 Policy claim in *Humane Society I*. Indeed, while Humane Society argues that there was no final judgment on the merits of its claims under the 2007-2008 Policy and the Employed Lawyers Policy, it does not try to argue that there was no final judgment on the merits of its claims under the 2009-2010 Policy against National Union. As discussed, the claims before me are based on the same transaction as in *Humane Society I*—the Feld litigation and ensuing expenses. Notably, in *Gonsalves*, the Court of Special Appeals held, without limiting its holding to the facts before it, that "[a] plaintiff who is denied leave to amend his or her complaint to add additional claims . . . is nonetheless barred from raising those claims in a second suit based on the same transaction or series of transactions as the first." *Gonsalves*, 5 A.3d at 783; *see also* 18 Wright & Miller, Fed. Prac. & Proc. Juris. § 4412 (3d ed.) ("Unless the court can be persuaded to direct that denial of leave to amend is without prejudice to advancing the new matter in a separate action, preclusion should apply. Any error should be corrected by appeal in the first proceeding." (footnote omitted)).[8]  Therefore, the final

---

[8] Humane Society moved for reconsideration and clarification of the denial of leave to amend, asking the Court to allow it to amend to bring the claims under the 2007-2009 Policy or at least to state that the denial was without prejudice to raising those claims in a separate proceeding. ECF No. 138 in *Humane Society I*. Judge Chasanow denied the motion, noting that

> the issue of whether claim preclusion or some other doctrine precludes Plaintiff from pursuing a separate action must be decided by Judge Grimm in the separate action. It would not be appropriate to address it in this case. What was before this

judgment on the merits of the 2009-2010 Policy claim satisfies the third element of *res judicata*. *See Gonsalves*, 5 A.3d at 783.

And, the *Gonsalves* Court further held that "*res judicata* should apply regardless of whether (a) the trial court's denial of leave to amend was erroneous, (b) the trial court's decision was based on procedural grounds instead of the merits, and/or (c) the adverse party opposed the motion for leave to amend." *Gonsalves*, 5 A.3d at 783. Thus, *res judicata* applies here, even though the denial was based on a failure to show good cause. And it would apply even if Humane Society actually had shown good cause, but the motion to amend had been denied anyway. *See id.* A final judgment exists on the merits in *Humane Society I*, a judgment that Judge Chasanow entered in National Union's favor, and "*res judicata* applies in that circumstance to the rulings that preceded the final judgment, unless challenged and overturned on appeal." *Id.*

Further, I note that Humane Society filed this lawsuit a month before Judge Chasanow denied leave to amend to add the same claims, and it brought the same claims in state court, where litigation still is pending. Additionally, it did not appeal Judge Chasanow's denial of leave to amend, which would have been the proper way to challenge the propriety of the denial of the motion to amend. And, Judge Chasanow found that it failed to exercise due diligence in bringing these claims in *Humane Society I*, which was before this Court for more than two years before Humane Society moved to amend. Considering the policy reasons underpinning the

court was solely whether Plaintiffs had established good cause to alter the scheduling order and satisfied the liberal standards regarding amendments to pleadings in this action. The court will decline Plaintiff's invitation to advise Judge Grimm on the dispositive motion before him by "clarifying" its denial of leave to amend the complaint.

Apr. 21, 2017 Mem. Op. 15–16, ECF No. 151 in *Humane Society I.*

doctrine of *res judicata*, if I were to allow this case to continue, it "would undermine the judgment of the original trial court and subvert the jurisdiction of appellate courts to review matters raised in or decided by the trial court," as well as "waste judicial resources and potentially lead to inconsistent decisions-outcomes that are directly at odds with the purpose of the *res judicata* doctrine." *See Gonsalves*, 5 A.3d at 783–84; *see also Anne Arundel County Bd. of Educ. v. Norville*, 887 A.2d 1029, 1037 (Md. 2005).  Consequently, *res judicata* bars Humane Society's claims in this litigation.  *See Gonsalves*, 5 F.3d at 783–84.

## CONCLUSION

In sum, National Union's Motion to Dismiss, ECF No. 9, is granted and Humane Society's claims in this case are dismissed because they are barred by *res judicata*.  After I reopened this case, Humane Society sought leave to file motions to supplement the record with documents from *Humane Society I* and to stay this litigation.  ECF No. 22.  Having chosen not to appeal Judge Chasanow's ruling, Humane Society cannot now present its issues with the outcome of that case to the Fourth Circuit through an appeal in this case.  In light of this ruling, Humane Society's request to supplement the record is denied, and its request to stay is denied as moot.

## ORDER

Accordingly, it is this 6th day of October 2017, by the United States District Court for the District of Maryland, hereby ORDERED that:

1.  Defendant's Motion to Dismiss, ECF No. 9, IS GRANTED;

2.      This case IS DISMISSED WITH PREJUDICE; and

3.      The Clerk SHALL CLOSE this case.


_____/S/_____
Paul W. Grimm
United States District Judge